**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**ALBERT L. ALLEN**

       **Petitioner,**

v.                                       **Case No.:  1:14-cv-02545**

**TERRY O'BRIEN, Warden,
Federal Correctional Institution-Hazelton**

       **Respondent.[1]**


**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), Petitioner's Motion for a Final Disposition in Support of His Title 28 U.S.C. § 2241 Application for a Writ of Habeas Corpus, (ECF No. 12), and Respondent's Response to the Order to Show Cause, wherein Respondent moves for the petition to be dismissed, (ECF No. 10). This case is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition ("PF & R")  pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the Petition for a Writ of Habeas Corpus pursuant to

---

[1] At the time of filing his petition, Allen was incarcerated at the Federal Correctional Institution-McDowell in Welch, West Virginia, and thus, he named the warden there, Bart Masters, as Respondent. (ECF No. 1 at 1). Since that time, Allen has been transferred to the Federal Correctional Institution-Hazelton in Bruceton Mills, West Virginia, where Terry O'Brien is the warden. (ECF No. 13 at 1). Pursuant to Federal Rule of Civil Procedure 25(d), Terry O'Brien will be substituted as Respondent in this case.

28 U.S.C. § 2241 be **DENIED**, that Petitioner's Motion for a Final Disposition be **DENIED**, that Respondent's request for dismissal be **GRANTED**, and that this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

## I.    Factual and Procedural History

Petitioner Albert L. Allen ("Allen") is currently an inmate at the Federal Correctional Institution-Hazelton in Bruceton Mills, West Virginia. (ECF No. 13 at 1). After a jury trial held in the Superior Court for the District of Columbia, Allen was convicted of second-degree murder while armed, contrary to D.C. Code §§ 22-2103 (formerly § 22-2403) and 22-4502(a)(3) (formerly § 22-3202), and possession of a firearm during a crime of violence or dangerous offense, contrary to D.C. Code § 22-4504(b) (formerly § 22-3204). (ECF No. 1 at 2; ECF No. 10 at 12). On April 1, 1992, Allen was sentenced to fifteen years' to life imprisonment for the second-degree murder conviction and a consecutive term of five to fifteen years' imprisonment for the possession of a firearm conviction.[2] (ECF No. 10 at 12-13).

After serving sixteen years in prison, Allen was scheduled for a parole hearing in front of a United States Parole Commission ("USPC") hearing examiner on September 5, 2007.[3] (*Id.* at 19). Before the parole hearing, a prehearing report was prepared in

---

[2] On April 4, 2005, Allen filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in the Northern District of West Virginia. *Allen v. Wendt*, No. 1:05CV59, slip op. at 1 (N.D.W.Va. Jan. 24, 2006). The district court noted that Allen moved to correct, set aside, or vacate his sentence pursuant to D.C. Code § 23-110 in D.C. Superior Court, and the Superior Court denied relief. (*Id.* at 2). The district court concluded that it lacked jurisdiction to hear Allen's § 2254 petition because D.C. Code § 23-110 barred Allen from challenging the validity of his convictions in a federal habeas corpus proceeding unless the remedy under § 23-110 was inadequate or ineffective, and Allen had not demonstrated that his remedy was inadequate or ineffective under that statute. (*Id.* at 5-7). Allen appealed the district court's order to the United States Court of Appeals for the Fourth Circuit, which denied Allen a certificate of appealability and dismissed his appeal. *Allen v. Wendt*, 185 F. App'x 288, 289 (4th Cir. 2006).

[3] On August 5, 1998, the USPC was given exclusive jurisdiction and authority over parole decisions for D.C. Code felony offenders. D.C. Code § 24-131(a). The previous entity that possessed jurisdiction over such decisions, the Board of Parole of the District of Columbia, was abolished. *Id.* § 24-131(b).

August. The prehearing report describes Allen's criminal conduct, as detailed in Allen's

*presentence* report:

> At 1:00 a.m., the father of the victim was in his bed when he heard his
> daughter scream from outside of the house. He looked outside of his
> window and observed his son-in-law, [Allen], standing in front of his
> house at the curb, pointing a pistol at his daughter. He yelled, "Al, Al,
> please don't shoot my baby." The subject then fired three or four shots,
> and killed the victim, who was his estranged wife.

(*Id.* at 15). In the presentence report, the prosecution asserted that Allen was a "jealous"

and "overly possessive husband" who used threats and violence to control the victim.

(*Id.* at 16). The prosecution further indicated that three months prior to her murder, the

victim moved into her parents' home across the street from Allen's home after

separating from Allen. (*Id.*) The prosecution theorized that, on the night of the murder,

Allen observed the victim leaving her parents' home with a friend's boyfriend and

awaited the victim's return home at which point he shot her "at close range." (*Id.*) The

prehearing report also notes that Allen was convicted of destruction of property after an

incident at the victim's parents' home months before the murder. (*Id.*) As for Allen's

conduct while in prison, the report states that Allen had received "excellent work

evaluations," but he had failed to "take[] advantage of any counseling or training

programs to address his anger management or violence." (*Id.* at 18).

At the September 2007 parole hearing, Allen's case manager and new wife

testified on his behalf. (*Id.* at 19). Allen's case manager asserted that she had no issues

with Allen, and Allen's wife indicated that she and Allen had a son together who needed

Allen in his life and that she could help Allen with employment and finances. (*Id.*) Allen

stated that he was sorry for what happened and apologized to the victim's family. (*Id.* at

20). He also asserted that the victim had a drug habit that had "messed up" her mind

and caused her to "constantly tak[e] from him." (*Id.*) Allen described the conduct underlying his destruction of property conviction as "an accident." (*Id.*) With regard to his time in prison, Allen stated that he had participated in some programs, but had not enrolled in any programs related to his offense, such as victim awareness, anger management, stress management, or rational emotive therapy. (*Id.*) The hearing summary also indicates that Allen had not received any "DHO [Discipline Hearing Officer] Level Incident reports" during his incarceration. (*Id.* at 21). Notwithstanding, the hearing examiner recommended that the USPC deny parole and schedule Allen for a reconsideration hearing in September 2010, which would require Allen to serve a term of imprisonment above that recommended by the parole eligibility guidelines. (*Id.*) The hearing examiner found that a decision departing upward from those guidelines was warranted based on the location of the murder, Allen's flight and absconding for six months after the murder, his conviction for destruction of property shortly before the murder, his failure to participate in programs to address his "offense behavior," and the diminishment of the offense severity if Allen were paroled at that time. (*Id.*) On September 24, 2007, the USPC issued a notice of action denying parole and continuing Allen to a three-year reconsideration hearing in September 2010. (*Id.* at 23). The USPC noted that Allen's parole eligibility guideline range was 218-224 months and that serving thirty-six additional months would place him above that guideline range (230 total months); however, the USPC concluded that a decision above the parole eligibility guidelines was warranted for the same reasons that the hearing examiner described.[4] (*Id.*)

On January 14, 2010, another parole hearing was conducted by a different

---

[4] The USPC did not make clear what parole eligibility guidelines that it used in its September 2007 decision.

hearing examiner. (*Id.* at 26). The hearing summary from that proceeding indicates that a memorandum in Allen's file described two incidents between Allen and the victim, which were relayed to the prior hearing examiner by the victim's family. (*Id.*) The summary states that, on one occasion, Allen threw a brick through the victim's parents' front window, which led the victim to obtain a civil protection order against Allen. (*Id.*) The victim's family also recounted a time when Allen attempted to "run the victim ... off the road" while she was in her car. (*Id.*) In addition, the summary details the physical and psychological trauma experienced by the victim's family members as explained in the victim impact statements that they provided before the September 2007 hearing. (*Id.* at 27). Allen admitted to shooting the victim at the hearing, but insisted that the shooting was "the result of misunderstanding" after the two had been arguing and that the victim was "on drugs" at the time. (*Id.* at 28). He stated that he was sorry and remorseful, and that he had learned to control his actions while in prison. (*Id.*) The hearing examiner noted that Allen had not completed any new programming since his September 2007 hearing, but he was on the waiting list for an anger management program. (*Id.*) Allen also continued to receive positive work evaluations. (*Id.*) Nonetheless, the hearing examiner recommended that Allen be denied parole and that a rehearing take place in January 2013. (*Id.* at 29). The hearing examiner recognized that the D.C. Board of Parole's 1987 Guidelines ("1987 Guidelines") indicated parole should be granted, but found that a departure from the guidelines was warranted because there was "a reasonable probability that [Allen] would not obey the law if released, and that [Allen] would endanger the public." (*Id.* at 29-30). The hearing examiner emphasized that Allen required additional programming, such as anger management or victim impact classes, to "remain crime free in the community." (*Id.* at 30).

An executive review of the hearing examiner's decision was performed on March 1, 2010, and the executive reviewer agreed with the hearing examiner's recommendation, but modified the reasons for departure. (*Id.* at 31). The executive reviewer determined that a departure was appropriate due to Allen's "exceptional cruelty" to the victim and his lack of programming to address the underlying cause of his criminal conduct. (*Id.*) On March 13, 2010, the USPC issued a notice of action denying parole and continuing Allen for a reconsideration hearing in January 2013. (*Id.* at 32). The USPC noted that it was applying the 1987 Guidelines and departing from those guidelines because there was "a reasonable probability that [Allen] would not obey the law if released, and [Allen's] release would endanger the public safety." (*Id.*) The USPC emphasized that Allen needed more programming to address the underlying causes of his criminal conduct and to reduce his risk to the community. (*Id.*) The USPC urged Allen to participate in anger management and victim impact programs.[5] (*Id.*) On July 8, 2010, the USPC issued a notice of action amending its March 2010 notice of action to add Allen's "exceptional cruelty" to the victim as a reason for departure from the 1987 Guidelines. (*Id.* at 34).

On May 13, 2011, Allen filed a § 2241 petition in this court challenging the USPC's March 2010 decision denying parole on Eighth Amendment and equal protection grounds. *Allen v. Cauley*, No. 1:11-0337, 2013 WL 2458526, at *1-*2 (S.D.W.Va. June 6, 2013). On March 1, 2012, United States Magistrate Judge R. Clarke VanDervort issued a PF & R recommending that Allen's § 2241 petition be denied on the merits. *Id.* at *1. Allen failed to object to Magistrate Judge VanDervort's PF & R, and on June 6, 2013, this court adopted the PF & R and dismissed Allen's § 2241 petition challenging the

---

[5] The USPC departed from the guidelines for both release on parole and the delay before a rehearing based on the same reasons. (ECF No. 10 at 32).

USPC's March 2010 decision. *Id.*

Allen's next parole hearing occurred on November 14, 2012. (*Id.* at 35). The victim's two sisters testified at the hearing and described the emotional trauma that they suffered as a result of the victim's death. (*Id.* at 35-36). After listening to one of the victim's sisters recount her father's and the victim's pleas for Allen not to shoot the victim, Allen insisted that he did not hear the victim's father. (*Id.* at 36-37). Allen denied that he was waiting for the victim to come home that night and stated that he was leaving to visit his cousin when he saw the victim return to her parents' home. (*Id.* at 37). He had no explanation as to why he was carrying a gun when he purportedly left to go visit his cousin, and the hearing examiner viewed Allen's possession of the gun as evidence of premeditation. (*Id.* at 37-38). The hearing examiner found that Allen did not appear remorseful at the hearing and that he "did not extend any form of apology or identification for what he had done." (*Id.* at 37). Allen informed the hearing examiner that he had completed victim impact and anger management courses; however, the hearing examiner opined that, based on Allen's demeanor at the hearing, it did not appear that those courses provided him with an "understanding of his actions" or insight into how the victims felt. (*Id.* at 37-38). The hearing examiner also concluded that the anger management program had not reduced Allen's risk to the community. (*Id.* at 38). Ultimately, the hearing examiner recommended denying parole and continuing Allen for a reconsideration hearing in November 2014. (*Id.*) The hearing examiner concluded that a decision above the parole guidelines was warranted because Allen was "a more serious risk than indicated by the guidelines in that [Allen's] offense involved exceptional cruelty to [the] victim," and Allen needed to complete additional programs

to address the underlying causes of his criminal conduct.[6] (*Id.*) The hearing examiner noted that the reasons for departure articulated in the USPC's July 2010 notice of action were still applicable. (*Id.*)

On January 31, 2013, the USPC issued a notice of action denying parole and continuing Allen for a rehearing in November 2014. (*Id.* at 40). The USPC applied the 1987 Guidelines and acknowledged that those guidelines indicated parole should be granted. (*Id.*) Nevertheless, the USPC found that a departure from the guidelines was necessary because Allen was "a more serious risk than indicated by [his] point score" given the "exceptional cruelty" to the victim and the need for Allen to complete additional programs to address the underlying causes of his criminal conduct.[7] (*Id.*) The USPC also referenced its July 2010 notice of action in support of its departure. (*Id.*)

On January 17, 2014, Allen filed the instant § 2241 petition challenging the USPC's January 2013 decision denying parole.[8] (ECF No. 1 at 1; ECF No. 2 at 5-8). Allen avers that the USPC violated its own procedures and the Due Process Clause of the Fifth Amendment when it failed to state with particularity the reasons for denying parole and based its decision on an inaccurate factual predicate. (ECF No. 2 at 5-6). Specifically, Allen maintains that the USPC failed to explain why his criminal conduct was categorized as exceptionally cruel, and that his conduct toward the victim, in fact, was not exceptionally cruel. (*Id.*) In addition, Allen contends that the USPC's decision is arbitrary and capricious as he completed the programs recommended by the USPC's

---

[6] The hearing examiner's summary did not explicitly state the parole guidelines that were applied.

[7] The USPC also departed from the guidelines that govern when the next parole hearing should be scheduled. (ECF No. 10 at 40).

[8] Allen concurrently filed a motion to expedite consideration of his § 2241 petition, (ECF No. 4), which the undersigned denied, (ECF No. 9).

March 2010 notice of action, but was stilled denied parole in January 2013 based on the need for "unspecified" additional programming. (*Id.* at 6-8).

After reviewing the petition, on March 17, 2014, the undersigned ordered Respondent to answer or respond to the application setting forth any reason why the relief sought by Allen should not be granted. (ECF No. 8). Respondent filed a response to the undersigned's order on May 14, 2014, requesting that the petition be dismissed. (ECF No. 10 at 1). First, Respondent asserts that the statute and regulation cited by Allen in his particularity argument are inapplicable to D.C. Code offenders, such as Allen. (*Id.* at 4). Second, Respondent contends that Allen possesses no liberty interest in parole under the D.C. parole statute, and therefore, no potential due process claim. (*Id.* at 4-5). Third, Respondent cites a host of authority from the District of Columbia Court of Appeals for the proposition that parole decisions under the D.C. parole statute cannot be reviewed on the merits since the D.C. parole statute "grants complete discretion" to the parole board. (*Id.* at 5). Finally, Respondent insists that the USPC's decision is supported by a rational basis, including Allen's lack of remorse and his failure to derive any benefit from the programs recommended by the USPC. (*Id.* at 7-8). On May 23, 2014, Allen filed a reply brief wherein he argues that the "central focus" of his § 2241 petition is that the USPC did not have a rational basis to support its January 2013 decision denying parole, particularly when Allen completed programming that the USPC suggested he complete in its March 2010 notice of action.[9] (ECF No. 11 at 2).

On June 15, 2015, Respondent filed a notice updating the court as to Allen's

---

[9] On February 11, 2015, Allen filed a Motion for a Final Disposition in Support of His Title 28 U.S.C. § 2241 Application for a Writ of Habeas Corpus. (ECF No. 12). To the extent that Allen's motion requests the undersigned to expedite the consideration of his petition, the motion is moot as a result of this PF & R. To the extent that Allen's motion requests the District Court to expedite consideration of his petition, the undersigned has no control over the District Court's management of its busy docket, and the motion will be mooted by the District Court's decision. In either event, the motion should be denied.

parole status. (ECF No. 15 at 1). Allen's most recent parole hearing occurred on April 15, 2015. As a result of that hearing, the USPC issued a notice of action on May 19, 2015 denying parole and continuing Allen for a reconsideration hearing in April 2020. (ECF No. 15-1 at 2). The USPC recognized that the 1987 Guidelines indicated that Allen should be granted parole, but departed from those guidelines because there was a "reasonable probability that [Allen] would not obey the law if released and [Allen's] release would endanger public safety." (*Id.*) The USPC stressed Allen's "exceptional cruelty to the victim in which [he] terrorized her and her family prior to the murder and then murdered her in front of her parents." (*Id.*) The USPC also noted that although Allen had completed anger management and victim impact programs, he was "unable to articulate any substance or helpful lessons [he] learned from th[ose] classes." (*Id.*) Furthermore, the USPC found that Allen was "not fully prepared" for release from incarceration because he had not completed a GED program. (*Id.*) The USPC concluded that Allen required additional programming and that he "must demonstrate how these [programs] will assist [him] in making better choices to reduce [his] risk from further criminal activity." (*Id.*)

## II.  Discussion

### A. Section 2241 and D.C. Code Offenders

Habeas corpus is the appropriate and exclusive remedy for a prisoner to attack the validity or duration of his confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). Where a prisoner seeks "immediate release or a speedier release" from imprisonment, the sole remedy is a writ of habeas corpus. *Id.* Under federal law, there are different forms of habeas corpus petitions, including 28 U.S.C. §§ 2241, 2254, and 2255; here, Allen seeks relief under § 2241. A habeas corpus

petition may be brought under §2241 to challenge the "execution" of a sentence, rather than the sentence itself. *United States v. Little*, 392 F.3d 671, 679 (4th Cir. 2004). Typical challenges to the execution of a sentence under § 2241 include "the administration of parole" and "computation of a prisoner's sentence by prison officials." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). In order to be entitled to habeas relief under § 2241, a prisoner must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Notwithstanding, there is some dispute as to whether a prisoner in custody pursuant to a state court judgment may bring a § 2241 petition in federal court, or whether such a prisoner must solely rely on § 2254 for habeas relief.[10] *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 876 n.9 (1st Cir. 2010) (recognizing circuit split on issue); *Gregory v. Coleman*, 218 F. App'x 266, 267 n.* (4th Cir. 2007) (same); *Hillberry v. Ballard*, No. 2:13-cv-21893, 2014 WL 7161012, at *5 (S.D.W.Va. Dec. 15, 2014) (same); *Gregory v. McBride*, No. 5:02-00472, slip op. at 8-9 (S.D.W.Va. Sept. 29, 2005) (same). As mentioned above, Allen is imprisoned in federal prison pursuant to an order of the Superior Court for the District of Columbia. D.C. Code offenders, like Allen, are considered to be state prisoners, rather than federal prisoners, even though they may be incarcerated in a federal prison. *See Madley v. United States Parole Comm'n*, 278 F.3d 1306, 1308-10 (D.C. Cir. 2002); *Garris v. Lindsay*, 794 F.2d 722, 724 n.8 (D.C. Cir. 1986); *Milhouse v. Levi*, 548 F.2d 357, 360 n.6 (D.C. Cir. 1976); *Wright v. Wilson*, 930 F. Supp. 2d 7, 10 (D.D.C. 2013); *Pinkney v. United States*, 802 F. Supp. 2d 28, 35 (D.D.C. 2011); *Boling v. Rivera*, No. 4:10-2957-CMC-TER, 2011 WL 6182124, at *3 (D.S.C. Dec. 13, 2011); *Banks v. Smith*, 377 F. Supp. 2d 92, 94 (D.D.C. 2005). *But see*

---

[10] The undersigned addresses this issue preliminary because, as discussed below, it is potentially jurisdictional.

*Padgett v. Hastings*, No. 7:05-353-DCR, 2006 WL 544287, at *3 (E.D.K.Y. Mar. 6, 2006) (stating that § 2254 is unavailable to "D.C. prisoners" because they are not persons in custody pursuant to state court judgment). In a number of unpublished opinions, the Fourth Circuit has enforced the habeas corpus certificate of appealability statute applicable to prisoners whose "detention ... arises out of process issued by a State court" against D.C. Code offenders. *See, e.g.*, *Brooks v. Wilson*, 597 F. App'x 746, 746 (4th Cir. 2015) (applying 28 U.S.C. § 2253(c)(1)(A) to D.C. Code offender's appeal of district court's denial of § 2241 petition); *Simmons v. O'Brien*, 267 F. App'x 264, 264-65 (4th Cir. 2008) (same). Given D.C. Code offenders' status as prisoners in custody pursuant to a state court judgment, it is unsurprising that there is some debate among federal courts as to whether a D.C. Code offender may bring a § 2241 petition in federal court at all.[11] *See Autrey v. Thomas*, No. 3:12-cv-1289, 2013 WL 1760519, at *6 n.4 (M.D. Pa. Apr. 24, 2013); *compare Robinson v. Reilly*, 340 F. App'x 772, 773 (3d Cir. 2009) (stating that D.C. Code offender's § 2241 petition challenging USPC's parole decision should have been characterized as § 2254 petition), *and Anderson v. Kruger*, No. 1:13-cv-0595, 2013 WL 4781750, at *1 n.1 (M.D. Pa. Sept. 5, 2013) (noting that habeas corpus petition by D.C. Code offender challenging USPC's revocation decision was cognizable under § 2254), *with Watson v. United States*, 392 F. App'x 737, 741 (11th Cir. 2010) (holding D.C. Code offender's claims directed at release and parole eligibility date miscalculation were properly brought in § 2241 petition), *and Ramsey v. Reilly*,

---

[11] As mentioned above, the district court denied Allen's § 2254 petition on jurisdictional grounds as a result of D.C. Code § 23-110. That statute prevents a federal court from entertaining a habeas petition filed by a D.C. Code offender challenging his conviction or sentence unless the remedy in D.C. Superior Court is "inadequate or ineffective to test the legality of his detention." D.C. Code § 23-110(a), (g). A number of federal courts have held that § 23-110 does not bar a federal court from hearing a D.C. Code offender's federal habeas claims that do *not* challenge his conviction or sentence, such as challenges to parole proceedings. *See Watson v. United States*, 392 F. App'x 737, 741-42 (11th Cir. 2010); *Blair-Bey v. Quick*, 151 F.3d 1036, 1037, 1043 (D.C. Cir. 1998); *Ramsey v. Reilly*, 613 F. Supp. 2d 6, 10 n.3 (D.D.C. 2009).

613 F. Supp. 2d 6, 10 (D.D.C. 2009) (declining to treat D.C. Code offender's § 2241 petition as § 2254 petition), *and Banks*, 377 F. Supp. 2d at 94-95 (leaving open possibility that D.C. Code offender may challenge "actions of a parole board" in § 2241 petition).

In this case, the procedural implications resulting from the characterization of Allen's petition are not dispositive. While it is true that 28 U.S.C. § 2244 treats federal habeas petitions differently depending on the type of petition filed, that disparity is only apparent when a federal habeas petitioner files a "second or successive" federal habeas petition. Although Allen has previously filed both a § 2241 and a § 2254 petition, "it is settled law that not every numerically second petition is a 'second or successive' petition within the meaning of the AEDPA [Anti-Terrorism and Effective Death Penalty Act of 1996]." *In re Williams*, 444 F.3d 233, 235 (4th Cir. 2006) (quoting 28 U.S.C. § 2244). The AEDPA does not define the terms "second or successive," however, the Fourth Circuit has held that "'a claim which did not arise until after a prior petition was filed' should not be 'barred as second or successive.'" *United States v. Hairston*, 754 F.3d 258, 262 (4th Cir. 2014) (quoting *In re Taylor*, 171 F.3d 185, 187-88 (4th Cir. 1999)). Stated differently, a claim raised in a numerically second habeas petition that was not ripe at the time that the initial habeas petition was filed does not fall within § 2244's "strictures" governing "second or successive" petitions. *Id.* (citing *Panetti v. Quarterman*, 551 U.S. 930, 942-47, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007)). Other federal courts of appeals agree with this approach. *See Hill v. Alaska*, 297 F.3d 895, 898 (9th Cir. 2002) ("Other circuits ... have held that a prisoner's ... petition ... should not be deemed successive if the prisoner did not have an opportunity to challenge the state's conduct in a prior petition."). For example, in an unpublished decision, the Ninth

Circuit held that a § 2254 habeas petition challenging the denial of parole was not "successive," where the petitioner's previous habeas petitions challenged earlier parole denials and the petition at issue challenged a different parole denial. *McCright v. Horel*, 284 F. App'x 508, 509 (9th Cir. 2008). Similarly, in *Crouch v. Norris*, 251 F.3d 720, 722 (8th Cir. 2001), the petitioner, Crouch, unsuccessfully challenged his convictions in a § 2254 petition, and later attempted to obtain permission from the Eighth Circuit to file a "second or successive" § 2254 petition challenging the state parole board's denial of parole. Rejecting a literal reading of § 2244's "second or successive" language, the Eighth Circuit concluded that Crouch's proposed § 2254 petition challenging the parole board's decision was not a "second or successive" petition because "he could not have raised his parole-related claims in his first habeas petition." *Id.* at 723-25. The court noted that holding differently would "all but foreclose challenges" by state prisoners "to the constitutionality of the execution of their sentences." *Id.* at 724.

The factual basis for Allen's parole denial in January 2013 was not apparent to him until that decision was issued. Consequently, Allen could not have challenged the USPC's January 2013 decision denying parole in his prior habeas corpus petitions, and the instant petition is not "second or successive" for AEDPA purposes. Finding otherwise would severely inhibit a state prisoner's ability to challenge parole decisions issued after an initial parole determination, if that initial determination is disputed in a federal habeas proceeding. For instance, a parole board's initial decision denying parole might be legally sound, but a subsequent decision denying parole might violate the Constitution. It would be incredibly difficult for a prisoner to obtain recourse for that subsequent denial if his petition were labeled a successive petition and § 2244's limitations were applied, particularly in those jurisdictions where state prisoners are

limited to filing § 2254 petitions. Indeed, § 2244(b)'s language governing the filing of a successive § 2254 petition does not contemplate such a claim. Although this approach potentially permits the filing of a federal habeas petition each time that parole is denied, federal courts may easily dispatch claims identical to those raised in a prior habeas petition.[12]

---

[12] If the court were to hold that Allen's claims are solely cognizable under § 2254 and that his petition was a "second or successive" petition, then the procedural barriers to filing a "second or successive" § 2254 petition erected by 28 U.S.C. § 2244(b) would obviate any need to consider the merits of Allen's petition, since Allen has previously filed a § 2254 petition that was denied by the United States District Court for the Northern District of West Virginia. First, § 2244(b)(2) requires a claim not raised in a prior § 2254 petition to be based on a new rule of constitutional law made retroactive to cases on collateral review, or a newly discovered factual predicate that establishes "by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the petitioner guilty of the underlying offense." Clearly, Allen has not argued the former, and it would awkwardly stretch the statutory language to say that Allen's current petition encompasses the latter exception. Second, under § 2244(b)(3)(A), before Allen could file a "second or successive" § 2254 petition in this court, he would be required to obtain an order from the Fourth Circuit allowing this court to consider the petition. He has not done so. Without approval from the Fourth Circuit, this court would not have subject matter jurisdiction over the petition. *See In re Page*, 170 F.3d 659, 661 (7th Cir. 1999). On the other hand, if Allen's petition were accepted on its face (as a § 2241 petition), then the court would have to consider whether § 2244 applies at all, and in the event that it does *not*, then the court would next consider the abuse of the writ doctrine, which is implicated because Allen has previously filed a § 2241 petition that this court denied. First, federal courts disagree as to whether *any* of the restrictions on successive habeas petitions contained in § 2244 apply to § 2241 petitions filed by prisoners in custody pursuant to a state court judgment. *Compare Queen v. Miner*, 530 F.3d 253, 255 (3d Cir. 2008) (recognizing that § 2244(b) is inapplicable to § 2241 petitions), *and Mathes v. Saffle*, 35 F. App'x 746, 748 n.1 (10th Cir. 2002) (calling into question district court's reliance on § 2244 in analyzing § 2241 petition), *and Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000) (stating that § 2244(b) does not apply to § 2241 petitions), *and Boling*, 2011 WL 6182124, at *3–*4 (finding that § 2244 does not apply to D.C. Code offender's § 2241 petition), *with Rittenberry v. Morgan*, 468 F.3d 331, 337 (6th Cir. 2006) (holding "section 2244(b) applies to any habeas corpus petition seeking relief from custody pursuant to a state court judgment," including § 2241 petitions). Some federal courts have applied § 2244(a) to successive § 2241 petitions by D.C. Code offenders or state prisoners, without discussing the limitation that § 2244(a) applies only to prisoners detained "pursuant to a judgment of a court of the United States." *See, e.g., Young-Bey v. Stansberry*, No. 1:08CV1172JCC/JFA, 2010 WL 768611, at *1, *4 (E.D. Va. Mar. 4, 2010); *Singletary v. Dewalt*, No. 2:04CV623, 2005 WL 1162940, at *4 (E.D. Va. Apr. 5, 2005) (report and recommendation); *cf. Mathes*, 35 F. App'x at 748 n.1 (recognizing district court relied on § 2244(a) in dismissing § 2241 brought by state prisoner). Second, assuming that no provision of § 2244 applies to a D.C. Code offender's § 2241 petition, the court could then consider whether Allen's § 2241 petition is barred as an abuse of the writ. The common law abuse of the writ doctrine, which generally applies to habeas corpus petitions and was not supplanted by § 2244, prevents a habeas petitioner from raising claims that could have been raised in a previous habeas petition, but were not. *See McCleskey v. Zant*, 499 U.S. 467, 488, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (summarizing abuse of writ precedent); *Boling*, 2011 WL 6182124, at *5 (citing cases for proposition that AEDPA amendments to § 2244 did not supplant abuse of writ doctrine). "[T]he government bears the burden of pleading abuse of the writ." *McCleskey*, 499 U.S. at 494. In this case, Respondent has not raised the successive petition issue, and consequently, has not pleaded abuse of the writ. In sum, if the petition were "second or successive," then the court may have subject matter jurisdiction over the petition if characterized as a § 2241 petition, but the court *would not* have subject matter jurisdiction over the petition if viewed as a § 2254 petition.

As the instant petition is not a "second or successive" petition for purposes of §
2244, the court retains subject matter jurisdiction over the petition whether it is
characterized as a § 2241 or a § 2254 petition. Yet, the undersigned is cognizant that this
court held in *Gregory* that "persons in custody pursuant to a state judgment must bring
their challenges to administrative actions under § 2254 and not § 2241." *Gregory v.
McBride*, No. 5:02-00472, slip op. at 9 n.3 (S.D.W.Va. Sept. 29, 2005), *aff'd on other
grounds sub nom*, *Gregory v. Coleman*, 218 F. App'x 266, 267 (4th Cir. 2007). *But see
Prokop v. Francis*, No. 1:14-15847, 2014 WL 6679262, at *1, *3 (S.D.W.Va. Nov. 25,
2014) (adopting PF & R construing § 2254 petition as § 2241 petition where state
prisoner challenged extradition); *Dalton v. W. Va. Parole Bd.*, No. 2:08-cv-01218, 2010
WL 395650, at *1 (S.D.W.Va. Jan. 19, 2010) (Judge Goodwin adopting PF & R
construing state prisoner's challenge to state parole board's procedures and decisions as
§ 2241 petition). However, *Gregory* did not concern a D.C. Code offender in federal
prison; in that case, the petitioner was a West Virginia state law offender incarcerated in
state prison. *Id.* at 2. In addition, since *Gregory*, the Fourth Circuit still has yet to take a
definitive position on whether a prisoner in custody pursuant to a state judgment may
bring a § 2241 petition, even though the Court often reviews the appeals of state
prisoners whose § 2241 petitions were denied by a district court. *See, e.g.*, *Scott v.
Vargo*, 594 F. App'x 167, 168 (4th Cir. 2015). Because the characterization of the
petition is ultimately not dispositive, and there is no indication that Allen filed his
petition under § 2241 to avoid the procedural requirements governing petitions brought
under § 2254, the undersigned will address the merits of the petition without
recharacterization. *See Hillberry*, 2014 WL 7161012, at *6 ("Here, the question of
whether [petitioner] may bring a section 2241 petition need not be answered because

the procedural vehicle is not dispositive."); *cf. Catlett v. Ballard*, No. 2:10-cv-00850, 2011 WL 320916, at *3 (S.D.W.Va. Jan. 28, 2011) ("As a practical matter, the Court will not permit Petitioner to circumvent the procedural requirements governing section 2254 petitions by simply styling his petition as one brought under § 2241.").

### B. Review of the USPC's Decision

As mentioned above, Allen contends that the USPC violated its own procedures and his right to due process under the Fifth Amendment to the United States Constitution when it denied parole without providing sufficient and factually supported reasons for doing so. (ECF No. 2 at 2). Moreover, Allen insists that the USPC's decision was arbitrary and capricious. (*Id.* at 2). In support of his position that the USPC failed to follow its own procedures, Allen cites 18 U.S.C. § 4206(b) and 28 C.F.R. § 2.13(c). (ECF No. 2 at 5). Allen also relies on three cases (two appellate and one district court) from the Third Circuit to aid his arguments. (*Id.* at 6-7).

Having received exclusive jurisdiction over parole decisions for D.C. Code felony offenders under D.C. Code § 24-131(a), the USPC is required to "follow the parole laws and rules of the District of Columbia as amended and supplemented by the USPC." *Allen*, 2013 WL 2458526, at *3. In Allen's case, the USPC applied the 1987 Guidelines since Allen met the criteria for utilization of those guidelines. *See* 28 C.F.R. § 2.80(o) (describing criteria for applicability of 1987 Guidelines and procedure for applying those guidelines). Under the 1987 Guidelines, after serving his minimum sentence, a D.C. Code offender became eligible for parole. *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 69 (D.D.C. 2008). The D.C. Board of Parole ("D.C. Board") would then determine whether the prisoner is suitable for parole based on four factors: (1) the degree of risk posed by the prisoner; (2) the type of risk posed by the prisoner; (3) any negative institutional

behavior; and (4) any sustained program or work assignment achievement.[13] *Id.* at 70-71. "The function of the 1987 [Guidelines] is to produce a 'total point score' (TPS) which ranges from 1 to 5. At an initial parole hearing, a prisoner with 0, 1, or 2 points 'shall be' granted parole with varying degrees of supervision. For a prisoner with 3, 4, or 5 points, '[p]arole shall be denied at initial hearing and rehearing scheduled.'" *Taylor v. Craig*, No. 5:05-cv-00781, 2009 WL 900048, at *7 (S.D.W.Va. Mar. 24, 2009) (quoting D.C. Mun. Regs. tit. 28, § 204.19 (1987)). At a parole rehearing, a prisoner with a score of 0, 1, 2, or 3 points "shall be granted" parole. Tit. 28, § 204.21. Conversely, a prisoner with 4 or 5 points "shall be denied" parole and continued for a rehearing. *Id.* At the time of the USPC's January 2013 decision denying parole, Allen's score was zero. (ECF No. 10 at 40).

"Irrespective of whether the 1987 [Guidelines] indicated that a prisoner's parole should be granted or denied, however, the D.C. Board retained the discretion to reach a different decision if merited by 'unusual circumstances.'" *Taylor*, 2009 WL 900048, at *7 (quoting tit. 28, § 204.22). If the D.C. Board decided to depart from the guidelines, then it was required to "specify in writing those factors which it used to depart." Tit. 28, § 204.22. Appendix 2-1 to the 1987 Guidelines supplied six reasons for departing from the guidelines, including (1) "repeated failure under parole supervision"; (2) "current offense involves ongoing criminal behavior"; (3) "lengthy history of criminally related alcohol abuse"; (4) "history of repetitive sophisticated criminal behavior"; (5) "unusually extensive or serious prior record"; and (6) the offense involved "unusual cruelty to [the]

---

[13] This is a broad overview of the 1987 Guidelines that suits the purposes of this PF & R. For a more detailed analysis, see *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 69-71 (D.D.C. 2008), and *Taylor v. Craig*, No. 5:05-cv-00781, 2009 WL 900048, at *7-*9 (S.D.W.Va. Mar. 24, 2009). The 1987 Guidelines and later policy statements cited in this PF & R are available at: http://www.justice.gov/sites/default/files/uspc/legacy/2011/12/30/parole-policy-guidelines.pdf (last visited June 18, 2015).

victims." *Id.* App. 2-1 at 2-34 to 2-35. On December 16, 1991, the D.C. Board adopted a policy guideline clarifying the 1987 Guidelines and specifically explaining the Appendix 2-1 departure factors, while including three new factors: "repeated or extremely serious negative institutional behavior"; "lengthy history of criminally-related substance abuse"; and "absence of community resources which ensure safety of the community." D.C. Parole Board, Policy Guideline 6-9 (Dec. 16, 1991). With regard to the cruelty to the victim factor, the 1991 policy guideline stated that a departure may be appropriate where the "instant offense involved unusual cruelty" to the victim, including "physical, mental or emotional abuse beyond the degree needed to sustain a conviction on the instant offense." *Id.* at 7. On October 23, 1995, the D.C. Board adopted another policy guideline superseding the 1991 policy guideline and providing a revised list of departure factors. D.C. Parole Board, Policy Guideline 1-3 (Oct. 23, 1995). The D.C. Board retained the description of the "unusual cruelty" to the victim factor contained in the 1991 policy guideline and added that a departure may also be warranted where a prisoner "needs programming ... to address the underlying cause of his or her criminal conduct and reduce the risk to the community." *Id.* at 2-3. In this case, the USPC found that a departure was warranted based on Allen's "exceptional cruelty to [the] victim and the need for [Allen] to complete additional programs to address [the] underlying causes of [his] criminal conduct."[14] (ECF No. 10 at 40).

To begin, the undersigned recognizes that a prisoner possesses no federal constitutional liberty interest in parole. *Swarthout v. Cooke*, 562 U.S. 216, 220, 131 S.Ct.

---

[14] The departure factor list has been deemed non-exhaustive. *Miller v. United States Parole Comm'n*, No. 3:CV-11-0993, 2015 WL 1525556, at *3 (M.D. Pa. Apr. 2, 2015); *Goodall v. Billingsley*, No. 11 Civ. 5603(RA), 2013 WL 3343658, at *6 (S.D.N.Y. June 28, 2013); *Sanders v. Atkins*, No. 1:11-1348-MGL-SVH, 2012 WL 6927990, at *5 (D.S.C. Aug. 6, 2012), *report and recommendation adopted by* 2013 WL 271672 (D.S.C. Jan 24, 2013).

859, 178 L.Ed.2d 732 (2011) ("There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners."); *Jago v. Van Curen*, 454 U.S. 14, 14-15,17, 21, 102 S. Ct. 31, 70 L. Ed. 2d 13 (1981); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Many federal courts, addressing D.C. Code offenders, have agreed that the D.C. parole system does not create a constitutionally protected liberty interest in parole. *Thompson v. Veach*, 501 F.3d 832, 836-37 (7th Cir. 2007); *Blair-Bey v. Quick*, 151 F.3d 1036, 1047 (D.C. Cir. 1998); *Ellis v. Dist. of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996); *Johnson v. Dist. of Columbia*, ____ F. Supp. 3d ____, 2014 WL 4443428, at *5 (D.D.C. Sept. 10, 2014) ("[I]t is established that D.C. prisoners do not have a constitutionally protected liberty interest in being released to parole."); *Greenwood v. English*, No. 5:13-cv-193-RS-EMT, 2013 WL 6085131, at *3 (N.D. Fla. Nov. 19, 2013) ("Because the D.C. parole statutes and regulations provide no substantive limitations on the Board's authority to grant parole, they do not create a liberty interest in parole release or the establishment of a parole date."); *Johnson v. United States*, 590 F. Supp. 2d 101, 109 (D.D.C. 2008) (recognizing under D.C. law prisoner possessed no liberty interest in parole based on initial order granting him parole and that such order was subject to rescission without affording prisoner due process). The District of Columbia Court of Appeals has held similarly. *See, e.g.*, *McRae v. Hyman*, 667 A.2d 1356, 1357 (D.C. 1995) ("The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion.").

Without a protected liberty interest in parole, Allen certainly cannot mount a procedural due process challenge to the USPC's decision. *See, e.g.*, *Sansotta v. Town of*

*Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Furthermore, absent a liberty interest in parole, the availability of a substantive due process claim to dispute the USPC's decision is dubious. *See Jackson v. Standifird*, 503 F. App'x 623, 625 (10th Cir. 2012) (holding prisoner could not argue denial of procedural or substantive due process where no state created liberty interest in parole); *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) (holding substantive due process claim challenging parole decision unavailable where prisoners had no liberty interest in parole); *Bailey v. Gardebring*, 940 F.2d 1150, 1157 (8th Cir. 1991) (rejecting substantive due process claim where prisoner had no constitutionally protected liberty interest under state law); *Harding v. Blumberg*, No. ELH-13-287, 2015 WL 302766, at *4 (D. Md. Jan. 22, 2015) (stating no substantive due process challenge exists without liberty interest in parole); *Slezak v. Glover*, No. 4:06-1122-RBH, 2008 WL 4308144, at *8 (D.S.C. Sept. 15, 2008) (same). *But see Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) ("Even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.").[15] At most, Allen *might* have a claim that his right to substantive due process was violated if the USPC's decision were "unconstitutionally arbitrary." *See Bell v. Anderson*, 301 F. App'x 459, 461-63 (6th Cir. 2008).

Even assuming that Allen could properly raise a substantive due process claim here, judicial review of that claim is decidedly narrow. The complete grant of discretion to the USPC in making parole decisions prevents a federal court from reviewing those

---

[15] At least one district court within the Third Circuit has questioned the "vitality" of *Block* in light of more recent Third Circuit decisions. *Rauso v. Vaughn*, No. 98-CV-6312, 1999 WL 111474, at *1 (E.D. Pa. Mar. 2, 1999).

decisions on the merits. *See Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981); *Allen*, 2013 WL 2458526, at *3; *Wilson-Bey v. O'Brien*, No. 2:11cv59, 2012 WL 1190898, at *3 (N.D.W.Va. Feb. 27, 2012), *report and recommendation adopted by* 2012 WL 1190896 (N.D.W.Va. Apr. 10, 2012); *Morgan v. Berkebile*, No. 5:09-cv-00966, 2011 WL 5040435, at *2 (S.D.W.Va. Oct. 21, 2011); *Wilson v. Pettiford*, No. 4:06-1616, 2007 WL 2238454, at *9 (D.S.C. July 31, 2007); *Forrester v. Garraghty*, No. 01-1366-AM, 2002 WL 32862999, at *4 (E.D. Va. Sept. 26, 2002); *Stevens v. Quick*, 678 A.2d 28, 31 (D.C. 1996) (holding that D.C. courts do not review merits of USPC's parole decisions). In *Garcia*, the Fourth Circuit held that the discretion granted to the USPC in making parole decisions under the federal parole statute, 18 U.S.C. § 4218(d), limited federal court review of parole decisions to whether the USPC "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." 660 F.2d at 988. *But see Alves v. United States Parole Comm'n*, 995 F.2d 1062, 1993 WL 212711, at *1 (4th Cir. June 18, 1993) (unpublished table decision) (stating that judicial review of USPC's decision denying parole was limited to whether decision was "arbitrary and capricious"). Like the federal parole statute at issue in *Garcia*, the D.C. parole statute provides the USPC with discretion to grant or deny parole. D.C. Code § 24-404(a). In addition, the D.C. Board enjoyed similar discretion under the 1987 Guidelines. Tit. 28, § 204.1; *Goodall*, 2013 WL 3343658, at *12. Since *Garcia*, federal courts within this district have recognized that the merits of the USPC's parole decisions for D.C. Code offenders are not subject to abuse of discretion review. *See, e.g.*, *Allen*, 2013 WL 2458526, at *2; *Morgan*, 2011 WL 5040435, at *2. *But see Foster v. Coakley*, No. CCB-10-961, 2010 WL 3446874, at *1 (D. Md. Aug. 31, 2010) ("This court's review of parole decisions is limited to a determination of whether the decision represents an abuse of the Commission's

discretion."). Although some federal courts have taken a more active role in reviewing the USPC's decisions, that is not the law within the Fourth Circuit. *See, e.g., Barnard v. Poteat*, 271 F. Supp. 2d 49, 51 (D.D.C. 2002) (collecting cases from the Second, Third, and Sixth Circuits permitting abuse of discretion or rational basis review of USPC decisions).

Turning now to whether Allen's petition alleges that the USPC "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations," Allen has argued that the USPC violated its own regulations by failing to state with particularity the reasons for denying him parole. *Garcia*, 660 F.2d at 988. While Allen cites a federal statute (18 U.S.C. § 4206(b)) and a federal regulation (28 C.F.R. § 2.13(c)) inapplicable to D.C. Code offenders,[16] the 1987 Guidelines do require the D.C. Board to "specify in writing those factors which it used to depart."[17] Tit. 28, § 204.22. In this case, the USPC, standing in the now-abolished D.C. Board's shoes, complied with § 204.22 of the 1987 Guidelines when it stated that a departure was warranted based on Allen's cruelty toward the victim and his need to participate in more programs. Although the USPC's January 2013 notice of action did not explore these reasons in depth, the USPC listed the factors that it used to depart from the guidelines; that is all that § 204.22 required. Allen's citation to *Marshall v. Lansing*, 839 F.2d 933 (3d Cir. 1988), on this point is unavailing. In that case, the Third Circuit analyzed the petitioner's claim under a statute applicable to federal parole decisions (18 U.S.C. § 4206(b)) that is more demanding than § 204.22. *Id.* at 941-43. Furthermore, in holding that the USPC ran afoul of 18 U.S.C. §

---

[16] *See, e.g., Wilson v. Francis*, 1:06CV132, 2009 WL 1351109, at *6 (N.D.W.Va. May 7, 2009) (finding § 4206 does not apply to D.C. Code offenders).

[17] The current federal regulation applicable to D.C. Code offenders states that the USPC "shall specify in the notice of action the specific factors that it relied on in departing from the applicable guideline or guideline range." 28 C.F.R. § 2.80(n)(1).

4206(b), the court noted that it was "impossible" for the court to determine how the USPC arrived at its reasons for denying parole. *Id.* at 942. That is not true here. In addition, the Third Circuit, which permits more extensive review of the USPC's decisions than the Fourth Circuit, has held that due process is satisfied by a brief statement of reasons containing less detail than the USPC provided to Allen in this case. *Hill v. Attorney Gen. of United States*, 550 F.2d 901, 902 (3d Cir. 1977); *see also Keitt v. United States Parole Comm'n*, 238 F. App'x 755, 758 (3d Cir. 2007) (reviewing USPC's decision for rational basis). Accordingly, Allen's claims under § 4206(b) and due process related to the sufficiency of the USPC's statement of reasons must fail.

Next, Allen argues that the USPC based its decision to deny parole on an "inaccurate factual predicate." Specifically, Allen asserts that the USPC's finding that his offense involved exceptional cruelty to the victim is incorrect. Allen's challenge treads dangerously close to a merits review of the USPC's decision, and he has not cited any Fourth Circuit authority allowing a prisoner to raise such a claim. Instead, Allen again cites to the Third Circuit, which held in *Campbell v. United States Parole Comm'n*, 704 F.2d 106, 109 (3d Cir. 1983), that "the [USPC] may not base its judgment as to parole on an inaccurate factual predicate." Even assuming that substantive due process protections prohibit the USPC from relying on inaccurate information in making parole decisions, which is entirely debatable, the USPC's finding that Allen's offense involved "exceptional cruelty" was supportable by the record. "In determining whether an offense involved unusual cruelty, the [USPC is] plainly entitled to consider the method and manner by which the offense itself was carried out." *Goodall*, 2013 WL 3343658, at *11. For example, other federal courts have upheld the application of the "unusual cruelty" factor where the prisoner shot the victim multiple times or at close range. *See id.* at *10-

*11; *Malede v. Wilson*, No. 2:11cv322, 2011 WL 7091509, at *1, *4 (E.D. Va. Dec. 14, 2011), *report and recommendation adopted by* 2012 WL 215151 (E.D. Va. Jan. 24, 2012); *Foster*, 2010 WL 3446874, at *1, *3; *Barnard*, 271 F. Supp. 2d at 51. In this case, Allen shot the victim multiple times at close range. (ECF No. 10 at 15-16). Allen killed the victim in front of her family's home where her parents and siblings lived. There is also some evidence that the victim's father and the victim pleaded with Allen to let her live before Allen shot her. (*Id.* at 15, 36). Allen then forced the victim's father to watch her murder while the victim's sister listened to the gun shots that killed her.[18] (*Id.* at 36). By any standard, Allen's conduct toward the victim on the night of the murder was extraordinarily cruel and involved "physical, mental, or emotional abuse beyond the degree needed to sustain a conviction on the instant offense." D.C. Parole Board, Policy Guideline 3 (Oct. 23, 1995). Moreover, the USPC did not solely rely on the exceptional cruelty factor to deny parole. The USPC also denied parole because Allen required more programs to reduce his risk to the community. As such, assuming that Allen's factual predicate claim is cognizable under the guise of substantive due process in the Fourth Circuit, it still falls short.

Finally, Allen contends that the USPC's decision is arbitrary and capricious because he completed the programs recommended by the USPC's March 2010 notice of action, but was stilled denied parole in January 2013. For support, Allen references *Turnage v. Bledsoe*, No. 3:08-CV-1662, 2010 WL 3632699 (M.D. Pa. Sept. 9, 2010). In *Turnage*, the district court stated, in *dicta*, that the USPC could not cite the prisoner's failure to complete a sex offender treatment program as a departure factor if the prisoner were able to "successfully complete" the program before his next parole

---

[18] Presumably, the victim knew that her father was watching this violent scenario unfold after hearing her father's cries.

hearing. *Id.* at *7 n.7. Relying on *Turnage*, Allen argues that his completion of victim impact and anger management programs precludes the USPC from denying parole on the bases that he needs additional programming and that he is a risk to the community.

First, as discussed in detail above, *Garcia* likely prevents this court from reviewing the USPC's decision under an arbitrary and capricious standard. *See Al-Ami'n v. Clarke*, No. 2:13cv167, 2014 WL 549326, at *4 (E.D. Va. Feb. 11, 2014) ("Petitioner's contention that his denial of parole was ... arbitrary and capricious is not cognizable under this habeas corpus review."). Second, setting aside *Garcia*, it was neither arbitrary nor capricious for the USPC to conclude that Allen required additional programming after reviewing the hearing examiner's observation that the programs Allen had completed "did not give him [an] understanding of his actions," and did not reduce his risk to the community. (ECF No. 10 at 37-38). The hearing examiner rightly analyzed the effect of the programs on Allen, not mere completion. Participation in programs does not guarantee release, particularly where the programs have not reduced the risk posed by the prisoner to the community. *See Bogan v. Dist. of Columbia Bd. of Parole*, 749 A.2d 127, 129 (D.C. 2000) (rejecting argument that prisoner was entitled to parole because he completed all of the programs required by parole board); *cf. Harris v. Stansberry*, 1:10cv1337, 2012 WL 27437, at *4 (E.D. Va. Jan. 4, 2012) (denying petition challenging USPC's decision where program completion did not outweigh risk to community). Although the USPC did not recommend specific programs for Allen to partake in, one can glean from the hearing examiner's December 2012 summary those areas in which Allen needs improvement. While it is commendable that Allen completed the programs recommended by the USPC in March 2010, the USPC rationally concluded that Allen required additional programs based on the hearing examiner's findings.

In sum, Allen has not demonstrated that the USPC "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations" when it denied Allen parole in January 2013. *Garcia*, 660 F.2d at 988. The USPC afforded Allen a parole hearing and provided him with a written notice adequately explaining his unsuitability for parole. The reasons supplied by the USPC for denying Allen parole in January 2013 are valid. Accordingly, the undersigned **FINDS** that Allen is not entitled to a writ of habeas corpus.

## III.   Proposal and Recommendation

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED**;

2. Respondent's request for dismissal (ECF No. 10) be **GRANTED**;

3. Petitioner's Motion for a Final Disposition in Support of His Title 28 U.S.C. § 2241 Application for a Writ of Habeas Corpus (ECF No. 12) be **DENIED**;

4. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David. A Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such

objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and counsel of record.

**FILED:** June 22, 2015

Cheryl A. Eifert
United States Magistrate Judge